**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| GARY A. MITCHELL, an individual, <br><br> Plaintiff, <br><br> v. <br><br> MERCY HOUSING, INC. DBA MERCY HOUSING, a Nebraska Company, <br><br> Defendant. | **Case No.            - SEA** <br><br> **COMPLAINT FOR DAMAGES AND JURY DEMAND** |

Plaintiff Gary A. Mitchell ("Mitchell" or "Plaintiff"), by and through his undersigned attorneys of record, Damien N. Villarreal and Vera P. Fomina of Skidmore│Fomina, PLLC, alleges as follows:

### I. PARTIES

1.1   Plaintiff is a citizen of the United States and an individual residing in Whatcom County, Washington.

1.2   Plaintiff is a former employee of Mercy Housing, Inc., DBA Mercy Housing ("Mercy").

1.3   Defendant is registered and licensed to conduct business in Washington State, including King County.

COMPLAINT FOR DAMAGES AND JURY DEMAND- 1

**SKIDMORE│FOMINA, PLLC**
14205 SE 36th Street, Suite 100
Bellevue, WA 98006

1.4  At all times relevant, Defendant was Plaintiff's employer pursuant to RCW 49.60.040(11).

1.5  Defendant employed the Plaintiff and benefited from his labors and supervised his employment.

1.6  Defendant is liable for the alleged unlawful actions and resulting damages and remedies sought herein.

## II.  JURISDICTION AND VENUE

2.1  This Court has jurisdiction over the parties and this matter under RCW 2.08.010.

2.2  Venue is appropriate in King County under RCW 4.12.020.

## III.  FACTUAL ALLEGATIONS

3.1  On or about May 1, 2017, Mercy hired Mitchell as a Maintenance Manager.

3.2  Mitchell's work was overseen by myriad managers and supervisors, including Mercy's Area Director Ron Dirks ("Dirks").

3.3  In his position of Maintenance Manager, Mitchell was responsible for 51 units at Mercy's Sterling Meadows Apartments, 21 units at Mercy's Sterling Senior Apartments, and was on call for the 24 units at Mercy's Boundary Bay Apartments in Blaine, WA.

3.4  One of the tasks Mitchell was required to perform was lift 150-pound domestic water heaters up multiple flights of stairs.

3.5  Mitchell advised Mercy Property manager Ellie Pullman ("Pullman") about the difficulty of moving the water heaters.  Ignoring the danger of the task, Pullman responded that "the [non-disabled] person who worked here before [Plaintiff] didn't have any problem – he did it."

3.6  On or about April 30, 2019, while lifting the water heaters at work, Mitchell suffered a hernia.

COMPLAINT FOR DAMAGES AND JURY DEMAND- 2

3.7 On or about May 1, 2019, Mitchell reported his injury to Pullman but received no response or guidance.

3.8 Mitchell continued to work with no accommodations as his pain persisted and worsened.

3.9 On or about June 10, 2019, Mitchell's healthcare provider Dr. Ian Bonner placed him on light duty which included pushing, pulling, and lifting restrictions. Mitchell was also scheduled for an appointment with a hernia surgeon the following month.

3.10 That same day, Mitchell provided Pullman with his written restrictions and discussed with her the light duty parameters provided by his physician.

3.11 Mitchell began working with light duty restrictions.

3.12 On June 17, 2019, Mitchell received an email from Dirks informing him he had spoken with Mercy's Northwest Vice President Kevin Weishaar ("Weishaar") and that Mercy was now denying his light-duty restrictions and mandating that Mitchell either work without any reasonable accommodations or leave and use vacation time until he was able to return to work with no restrictions.

3.13 Unable to perform his essential job functions without a reasonable accommodation, Mitchell followed Dirks's instructions and went home on unpaid leave.

3.14 Shortly thereafter, Mitchell received multiple text messages and calls from several of Mercy's building managers, including Howard Livingston, Judy Olalia, Wendy Briggeman, and Julie Doneth expressing regret that he had resigned.

3.15 This left Mitchell deeply confused because he had not resigned. Instead, Dirks had instructed him via email to leave work because Mercy would not engage in the interactive process to accommodate his disability.

3.16 On June 19, 2019, Mitchell saw Dr. Eric Smith with Washington State Department of Labor and Industries ("L&I") regarding his disability.

COMPLAINT FOR DAMAGES AND JURY DEMAND- 3

Skidmore | Fomina, PLLC
14205 SE 36th Street, Suite 100
Bellevue, WA 98006

3.17   Dr. Smith extended Mitchell's light duty restrictions until July 16, 2019.

3.18   The following week, when Mitchell was unable to fill his prescription at a pharmacy, he learned that his employment had been terminated and his health insurance had been cut off.

3.19   Mitchell spent the following week reaching out to Mercy's headquarters to clarify his employment status and get his health insurance reinstated.

3.20   On or about June 26, 2019, Mitchell finally spoke with Mercy's Senior Vice President of Human Resources Janice Turner ("Turner") and complained about Mercy's discriminatory and retaliatory treatment of him.  Turner told Mitchell to contact Mercy's Human Resources Business Partner Jonel Moseley.

3.21   On June 29, 2019, Mitchell emailed Moseley with his L&I Activity Prescription Form delineating his extended light duty parameters from Dr. Smith.

3.22   On July 1, 2019, Dr. Smith formally submitted Mitchell's worker's compensation claim with L&I.

3.23   That same day, Moseley wrote Mitchell to inform him that he was going to be placed back in Mercy's system as an active employee but that he was to be placed on a medical leave of absence due to his injury and that his insurance would be reinstated.

3.24   Despite the representations that he had been placed back in Mercy's system, Turner, Weishaar, Dirks, and Pullman continued to refuse to engage in the interactive process and failed to provide Mitchell with reasonable accommodations.

3.25   In or around early July 2019, L&I approved Mitchell's worker's compensation claim.

3.26   Despite multiple attempts by L&I to contact and verify Mitchell's wages, Mercy consistently failed to respond to L&I's inquiries.

3.27  On or about August 7, 2019, while still on unpaid leave due to Mercy's refusal to accommodate and engage in the interactive process, Mitchell received a FedEx envelope containing another termination letter from Mercy's Human Resources Leave Coordinator Sarah McConaghie ("McConaghie").

3.28  McConaghie backdated the termination letter to March 18, 2019, which would have been three months prior to his injury, and stated that Mitchell had failed to provide documentation substantiating his disability, and that his employment had been terminated for abandoning his job because he was off work due to his injury.

3.29  Although Mercy's management and HR, including McConaghie, Turner, Weishaar, Dirks, and Pullman had been appraised of Mitchell's disability status and the accommodations needed to return to work, nobody ever requested any further information, engaged in the required interactive process, or told him that his employment would be terminated.

3.30  On or about August 13, 2019, Mitchell wrote to McConaghie expressing his dismay at the termination based on his disability, and he updated her as to the current status of his medical condition and light duty parameters.  Mitchell never received a response to his email.

3.31  On or about August 14, 2019, although he had updated his address with Mercy and had been receiving Mercy communications to his new address, Mitchell received a package from Mercy's HR department that had been mailed by Mercy on August 8, 2019, to his old address containing Mercy's request for further information regarding his disability-based leave of absence.

3.32  Mitchell had never received that packet prior to his termination.

3.33  Upon information and belief, McConaghie, Turner, Weishaar, Dirks, and Pullman had the requisite authority to decide whether Mitchell received a reasonable accommodation for his disability.

COMPLAINT FOR DAMAGES AND JURY DEMAND- 5

3.34   McConaghie, Turner, Weishaar, Dirks, and Pullman failed to communicate with Mitchell, follow up in any way about this second termination, or make any alternative attempts to reach Mitchell and discuss the needed accommodations.

3.35   Upon information and belief, McConaghie, Turner, Weishaar, Dirks, and Pullman were involved in the decision to terminate Mitchell's employment with Mercy due to his disability, requests for accommodation, and filing a worker's compensation claim with L&I.

3.36   As a result of Defendant's unlawful actions, Plaintiff has suffered significant economic and non-economic damages in an amount to be proven at trial.

## IV.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Disability Discrimination**
**Washington Law Against Discrimination, RCW 49.60 et seq.**

4.1   Plaintiff re-alleges and incorporates herein the preceding paragraphs of this Complaint.

4.2   During his employment, Plaintiff was injured and suffered from a disability within the meaning of RCW 49.60.

4.3   Plaintiff was able to perform the essential functions of his job.

4.4   Defendant was aware of Plaintiff's disability and need for accommodation.

4.5   Plaintiff's employment was terminated while he was taking a leave of absence due to his disability and his disability was a substantial factor in the decision to terminate him.

4.6   As a result of Defendant's violations, Plaintiff has been damaged in an amount to be proven at trial.

### SECOND CAUSE OF ACTION
**Failure to Accommodate Disability**
**Washington Law Against Discrimination, RCW 49.60 et seq.**

4.7   Plaintiff re-alleges and incorporates herein the preceding paragraphs of this Complaint.

4.8   Plaintiff was disabled within the meaning of RCW 49.60.

4.9   Plaintiff was able to perform the essential functions of his job.

4.10   Plaintiff gave notice to Defendant regarding his disability and limitations and requested an accommodation.

4.11   Upon notice, Defendant failed to further accommodate Plaintiff or to engage in the interactive process and terminated Plaintiff's employment because of his requests and need for accommodations.

4.12   Defendant failed to continue to affirmatively adopt available measures that were medically necessary to accommodate his disability.

4.13   As a result of Defendant's violations, Plaintiff has been damaged in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### Retaliation
### Washington Law Against Discrimination, RCW 49.60.210(1)

4.14   Plaintiff re-alleges and incorporates herein the preceding paragraphs of this Complaint.

4.15   Plaintiff complained about Defendants' discriminatory treatment based on his disability and requested disability accommodations.

4.16   Plaintiff reasonably believed such actions to be unlawful and requesting accommodations is protected conduct.

4.17   Plaintiff's complaints and requests for accommodation were a substantial factor in the decision to terminate Plaintiff's employment.

4.18   As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
### Wrongful Termination in Violation of Public Policy

4.19   Plaintiff re-alleges and incorporates herein the preceding paragraphs of this Complaint.

4.20   Plaintiff exercised his legal right by filing a workers' compensation claim with Washington State Department of Labor and Industries.

4.21   Plaintiff also engaged in protective conduct when he complained that he had been discriminated against based on his disability, requested accommodations of his disability,

4.22   Plaintiff was fired for exercising a legal right or privilege, *i.e.*, filing a workers' compensation claim with L&I and asserting rights under the WLAD.

4.23   Defendant was substantially motivated to terminate Plaintiff because he filed a workers' compensation claim, was disabled, and requested disability accommodations.

4.24   As a direct and proximate cause of defendant's actions, Plaintiff has been damaged in an amount to be proven at trial.

### V.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays judgment in her favor and for relief as follows:

5.1   Economic damages for back pay, front pay, lost benefits, and medical expenses in an amount to be proven at trial;

COMPLAINT FOR DAMAGES AND JURY DEMAND- 8

5.2    Damages for actual compensatory, consequential, and incidental damages as alleged herein or as proven at trial;

5.3    Damages for loss of enjoyment of life, pain and suffering, mental anguish, emotional distress, and humiliation;

5.4    Compensation for any tax penalty associated with a recovery;

5.5    Reasonable attorneys' fees and costs pursuant to RCW 49.60.030(2), and as otherwise allowed by any other statute or claim alleged herein, along with reasonable expert witness fees and other fees and costs incurred in prosecuting this action in an amount to be proven at trial.

5.6    Pre-judgment interest on all amounts awarded as allowed by law;

5.7    Post judgment interest; and

5.8    Such other and further relief as the Court deems just and equitable.

DATED: March 11, 2022.

*/s/ Damien N. Villarreal*

Damien N. Villarreal, WSBA #50708
Vera P. Fomina, WSBA #49388
*Attorneys for Plaintiff*